Next on the calendar is number 16232, Caesars Entertainment Corporation v. Pension Plan of the National Retirement Fund. Thank you. Mr. Shah. May it please the Court, Pratik Shah for Appellant Caesars Entertainment Corporation. ERISA requires arbitration of only a specified subset of claims, those concerning withdrawal liability determinations made under Sections 1381 to 1399. This suit, by contrast, raises a single claim concerning, at most, a condition precedent to a withdrawal liability determination, that is, whether the fund had legal authority to expel the employers despite the fact that they had never missed a contribution payment or expressed any intent of doing so. That narrow and rare claim is not subject to arbitration because it is limited to the threshold issue of the fund's authority to expel and not, as the District Court mistakenly believed, whether any such expulsion, assuming it were valid, actually caused a complete withdrawal. It is not difficult to discern where the District Court went wrong, and I would point this Court to Special Appendix page 10. This is from the Magistrate Judge's opinion, which was adopted in full by the District Court, and the key sentence is here. Quote, here the primary question is whether a complete withdrawal has occurred. End quote. If that really were the primary question in this case, then we would agree it would be subject to arbitration. But the antecedent legal dispute over whether the fund had power to expel the employers in the first place Are you arguing that a prerequisite to triggering the statutory requirement of arbitration is a determination, a specific determination of the amount of the withdrawal liability? There has to be. That is one of our arguments. We have two arguments. But yes, there has to be a determination made under 1381 to 1399. That's what the statute says. But I have trouble understanding how you can make that argument in view of the fact that 1383 doesn't require a specific determination of a specific amount of liability. So you can have a dispute with respect to 1383, and that, in fact, was one of the provisions in your declaratory judgment action under 1383 without a specific determination of the amount. Sure, Your Honor. So just to be clear on our timing argument, we're not saying that it has to be the actual determination of the amount has to happen. It can be any determination under 1381 to 1389, and you are correct. One of those determinations is the actual withdrawal determination. Let me try to be clear on this. You are making two arguments. One of them is the underlying argument that this issue is not arbitrable because it is an issue about whether there is an agreement. The second one is even if that is more clear, a determination of withdrawal has to be made, not a determination of amount, just a determination of withdrawal simply because the statute says determination made and that on the language of the statute no determination of any sort is made. You're not arguing about whether a determination of amount is made. That is exactly correct, Your Honor. That's exactly right. That is our alternative argument that even if this threshold determination of expulsion were determined to be arbitrable, here you don't even have a determination made as to whether, forget amount, even as to the withdrawal itself given the timing of this complaint, which was filed not only before any withdrawal determination but before the expulsion decision itself.  a specific amount of withdrawal liability because among other reasons the way in which the statute is structured, the time to file for arbitration never begins to run until there has been a specific determination of an amount of withdrawal liability. Your Honor, I'm sorry if it was confusing, but our argument is there has to be a withdrawal determination of some sort under 1381 to 1399. Amount is one of them, but withdrawal is another. But none of those, even if you don't have the withdrawal, none of those can be triggered until you actually get the notice of withdrawal liability. And I think here's where the confusion is. That notice of withdrawal liability is not sent until they've calculated the amount. So here's how the exhaustion regime works under ERISA, and this is why it doesn't make sense to force this antecedent expulsion claim into arbitration. Not only does there have to be a determination, which could be a determination, any determination under 1381 to 1399, but the exhaustion regime is triggered by the actual sending of the notice of withdrawal liability, and that notice is not sent until the amount is calculated. And so that's where the amount comes in, but that's really not the focal point of the argument. The statute itself requires any determination under 1381 to 1399. We don't have any such determination here because the complaint was filed before any expulsion. Actually, if you could focus on the timing here. I was struck by the race to the courthouse flavor of your arguments, in that my understanding is you filed your complaint seeking declaratory relief on January 8 of 2015. Four days later, CEC filed the complaint. Oh, no, the fund expelled the employers, right, and then thereafter you served the fund. So do you concede, then, if the expulsion had happened four days earlier, before you filed your complaint, that that would be sufficient to constitute a determination that is subject to the mandatory arbitration? No, Your Honor. We have an independent argument that regardless of the timing here, not only if we had filed suit not only after the expulsion, but even after they had made the withdrawal determination, which didn't come until a month after that, even if all of those things had happened and then we filed suit, there's still the question of whether, and if we limited the complaint simply to the antecedent legal issue of do they have authority to expel, separate and apart from whether a withdrawal had actually occurred, then that is still not a determination under 1383. Your argument is that authority to expel and the context of this particular one in which we are using authority to expel as a powerful weapon to make you concede to other things, that that question is not an arbitrable question under the statute in agreement. That is exactly right, Your Honor. And the timing only makes it more stark because it shows that it really is an antecedent question because all of this happened before the expulsion, let alone the later determination of a withdrawal. Do you agree, though, that the authority to expel also might derive from the collective bargaining agreement and not just the statute? Yes, Your Honor. It could arise from the trust agreement. And if you read our complaint as a whole, the gravamen of the complaint is there is no authority to expel, whether you look at ERISA, whether you look at fiduciary obligations, whether you look at the trust agreement, the collective bargaining agreement, there is nothing. And so it's just a legal question, do they have any authority to expel? And I think the key point here is that is a distinct question from whether there's actually been a complete withdrawal under Section 1383. Would an arbitrator experienced in ERISA matters have any expertise to bring to bear on understanding how ERISA operates and what the CBA provided? Your Honor, there may be some expertise in that situation, but I think where the arbitrator's role would come in is if this court were to decide that there actually is authority, antecedent legal authority to expel, then the question would arise, okay, does that expulsion, assuming it were valid, actually result in a complete withdrawal? And that's when you're in sort of the bailiwick of the arbitrator, so to speak. But first, there is that antecedent question of whether you have the authority to expel. And just to be concrete, you can have a scenario where it's not hard to imagine a scenario where you have an expulsion, but no subsequent finding of withdrawal liability. And in those scenarios, if the district court is right and the other side is right, that you have to wait for a withdrawal liability determination to arbitrate, there would be no recourse, there would be no method for an employer to get review. And let me just be concrete about it. You can imagine a fully funded plan, right, such that if the employer were expelled by the fund, there would be no withdrawal liability because withdrawal liability only applies to underfunded plans. But the employees of that employer are still hurt because they essentially can't accrue pension under the plan because they've been expelled. If the district court is right and the other side is right, they would have no recourse because their only recourse is an arbitration. Arbitration can't happen until you actually have a withdrawal determination, but none would happen in this circumstance. And there are other circumstances. The district court, the magistrate judge accepted by the district court, decided to exercise discretion to send the dispute to arbitration. What's our standard of review for to review that determination? Your Honor, I think that would be an abuse of discretion review, but that's not the argument that we want to press forward. We do make that in the alternative in the end. But I think our focus is on whether, in fact, the statute is triggered. If we ever reach that point, you don't think that that would be a basis to reverse? I do think it would be a basis to reverse, Your Honor, because, in fact, this is the type of issue that a court should decide. But before you get there, the question is whether it falls within the narrow terms of the statute. Is this a dispute concerning a withdrawal liability determination where, one, as to the timing point, no determination is made, expulsion or withdrawal liability? But, two, to the larger point, forgetting about timing, is this the type of issue that actually is a determination made under 1383? And that, Your Honor, the answer is no. For all the reasons that I've said, you can have expulsion determinations. I still have trouble understanding how you could bring a declaratory judgment action for a determination under 1383 and then turn around and say, well, this is not a determination under 1383 for purposes of requiring arbitration. Right. Your Honor, so we don't mean to be bringing the declaratory judgment action under 1383. I think the key point of the complaint is there is no statutory authority or authority under any source, trust agreement or statute. And then in our complaint, paragraph by paragraph, we go through all the potential sources of authority, whether it's the trust agreement, various ERISA provisions, including 1383, 1392, and 1104, which is not enumerated provision, fiduciary breach obligations. And our point in doing that was to say none of these provide statutory authority, not to say that our declaratory judgment action arises under 1383. It's actually quite to the contrary. The following paragraph, which actually asks the relief that we're seeking, is a declaratory judgment to say that there is no right to reject payments from an employer. That's all we're seeking, not a declaratory judgment that there is no complete withdrawal under 1383. But we mentioned 1383. Your basis, then, for the declaratory judgment is that you're in danger of having that, and you're asking for a declaratory judgment that says that they have no authority anywhere. Am I understanding you? That's correct. In the context of what was going on here explains the timing of this, Your Honor. You were asking about the race to the court house. This wasn't sort of a race to the court house. There were ongoing negotiations between these parties. They had made the threat, as it's alleged in the complaint, that if you don't accept these circumstances, we're going to expel you. During those negotiations, in order to help the negotiations, we filed the declaratory judgment action. We had no idea when they would actually then expel turned out. You didn't serve them right away. No, but, well, not formally, but they knew about it. They were ongoing. They were given, emailed the complaint, and they certainly knew about it all along, so it wasn't like this was a secret complaint or anything like that. It just wasn't served under the rules, and I think part of the reason, just to give you practical color, there were ongoing negotiations throughout. They filed the separate suit afterwards. Okay. Thank you, Your Honor. You have three minutes for rebuttal. I appreciate it. Mr. Richmond for the fund, please. Thank you, Your Honor. Ronald Richmond from Schulte, Roth, and Zabel for the National Retirement Fund. I do want to focus first on the timing issue. There were a lot of discussions or an attempt, which I think is more accurate, a lot of discussions between the National Retirement Fund with respect to Caesars because the fund could read the newspapers and the financial news as everyone else could about an impending bankruptcy with respect to Caesars and allegations, which the examiner in the bankruptcy court actually found to be accurate, that there were billions of dollars being removed from certain Caesars entities to other Caesars entities. And there were ongoing discussions, and that led to a standstill agreement, which the Caesars terminated. On the same day it terminated the standstill agreement, it filed the complaint. Yes, we were surprised that there was a complaint filed. And, yes, this was the absolute race to the courthouse. It was a shot across the bow of the National Retirement Fund. It was an attempt to undermine the carefully prescribed statutory procedure for dealing with withdrawal liability. It is a red herring to say that there was some attempt here to protect participants. Isn't there a fundamental problem with a situation in which there seems to be a very heavy penalty on people who withdraw for reasons which make sense, that you don't want people to pull out and leave a thing in deficit, and saying that you have a right to cause that person to withdraw by forcing them out? Now, that seems to be a very different issue than the issue of what happens if somebody withdraws. That issue of what happens when somebody withdraws is clearly arbitrable under the statute. This other question of whether somebody can cause the other one to withdraw and create this is a tough issue. But to say that that is an issue for arbitration because the other one is, is making some kind of a leap. Maybe it is, but they're very different questions, aren't they? No, no, I don't believe they are. And if you start with, obviously, the starting place, which is the statute, and that's the 1421A1 or 1401 in the court speak. Any dispute between an employer and the plan sponsor, and there's no question here there was a dispute, of a multi-employer plan concerning a determination. A determination that is made. A determination that is made, Your Honor. See, my problem is that if you look to what is going on and whether the issues are the same, then I think they're very different. If you look to the statute, as you are doing, and understandably because a statute is your broadest ground, then the statute has this odd word made, and that then is their second argument. And that's my question, you know, if you look at it broadly, it seems to me this is a different issue. If you look at it narrowly, then you look at the statute, and then maybe there was a race to the courthouse, but maybe the statute provides for it. And we don't believe the statute does provide for it, Your Honor, because the fact of the matter is if you permit a race to the courthouse, what you will have coming up is the ability of employers to completely undermine these sections, which were carefully put in place by Congress to ensure that an arbitrator who is schooled in labor relations and interpretation of trust agreements, a contract, and is schooled in withdrawal liability matters, you will take that arbitrator out of the mix. Well, now we're again being given a parade of horribles, and I'd like to know whether in a situation unlike this, where it is the fund that is trying to force the withdrawal, but in a situation where somebody withdraws, you would have this possibility of no determination being made and the person going to court. What would they be looking for a declaratory judgment in in a situation where they had withdrawn, given that as to amount, as Judge Kirtle said earlier, there are other provisions of the statute that apply directly? There are plenty of issues that would come up. And so let's take a situation where somebody withdraws and there is an assessment of liability. And so an employer desiring to put off the statutory scheme here turns around and says, we have issues with respect to authority. So was the meeting properly called at which the assessment was determined by the fund? Was there a quorum? Was the vote counted properly? And that sounds like a funny question, but again, in most of these plans, there is what's considered to be block voting as opposed to other voting, and that is the union trustees vote as one block and count as one vote, and the employer trustees count as vote as another block, and that's counted as one block. And there are many trust agreements that say certain issues are block voting and certain issues are majority voting. So I could very easily see, and I do think it is a real possibility. I actually don't think it's a real possibility. I think it's a probability that we will see and you will see. It is the argument that arbitration doesn't apply unless some decision is made, because if it is some decision that is made, then on withdrawal, it would be very easy for the fund to make a decision. But then a decision is made. If the argument is that a decision has to be made about the specific point in dispute, then I see your argument, then anything could be opened. Well, I think in the vast majority of situations, an employer knows that they may withdraw, and they would have the ability to go to court before any actual determination is made, because the way the process works generally, and I'm not talking about the expulsion process, but the way the process works generally is that employers and the fund have a discussion about what has occurred for the fund to determine whether, in fact, there has been a withdrawal and whether it's appropriate to assess withdrawal liability. During that discussion, it would be very easy, Your Honor, for an employer to turn around and undermine the entire process by saying, by running to the court. Now I'd like to address Why doesn't just the general legal question about whether the statute allows trustees to force withdrawal, both as a matter of statute as well as the CBA at the same time, or the trust agreement, why isn't that a purely legal question, at least as a threshold matter? Well, it's not, because the, and we take the case here. There is a provision in the trust agreement that provides that the trustees can do all things necessary and proper. And it's actually the same provision that was before the Eighth Circuit in a case, an expulsion case that did not involve withdrawal liability, so it didn't have to go through this provision, through the arbitral scheme. May I just interrupt your answer to ask just a question related to it? But do you agree that in answering this question, that if that were the grounds for decision, that would not open up the parade of horribles, that that would deal with a specific narrow issue rather than the parade of horribles? I don't agree. And let me see if I can finish the answer to the question, then I'm happy to answer your question. But the fact of the matter is that there will be an interpretation of the authority of the plan. And what the Bowers court said, the Second Circuit decision, is it doesn't matter if it's a factual question, if it's a contract question, which it would be because we're looking at the trust agreement, then it's an issue, the prudential decision of this court is that it goes through the arbitration scheme. With respect to, even if it were a legal issue, I would, under the prudential standard that's been set out by this court in several decisions, two decisions, that I mentioned no unresolved questions of fact or issues of contract interpretation. The court review is judiciously economical. Well, here's the problem here. The court review in this situation is not going to be judiciously economical. What's going to happen here, and you can see it by their complaint, you look at their complaint and they're complaining about the interest rate that was used, which they claim inflated the arbitration. They're complaining that the decision here implied a withdrawal liability rule under 4214 that was not uniformly applied. Those issues are going to be arbitrated. So if a court makes a decision, then what's going to happen is it's going to go back to arbitration for a decision calculating the actual withdrawal liability and whether there was withdrawal and calculating the withdrawal liability. And then that decision, given that there's $362 million involved here, is going to come back to this court for review of that arbitrator's decisions. And my view strongly held is that this court should let the statutory scheme work, have it go to arbitration, and you'll see it again. With respect to the statutory scheme under 1401, help me to understand when you can actually go to arbitration because the way in which it's worded, it appears to have arbitration proceed only after there has been a determination of withdrawal liability. So there has to be a determination of a specific amount of withdrawal liability before the parties have the power to go to arbitration. Is that right? I have never seen a case where someone has challenged the determination that there has been a withdrawal without foreseeing their withdrawal liability. But I do believe because it's a determination under the statute that, in fact, an employer could challenge that determination because it's a, again, I call 4203, but it is a determination under that section which is subject to arbitration. Someone could challenge it, but that's not going to happen. And the reason it's not going to happen— I didn't really get an answer to Judge Kirtle's question. If it says under 1401 that you cannot go to arbitration until a determination of something is made, then how can you say that these people didn't meet a condition, didn't exhaust when they couldn't have exhausted? Well, the fact is they prematurely ran to the courthouse. And the case is that issue is not ripe for this court. It's— No, but look, if they could not have gone to arbitration, then why didn't they have a right to go to the court to ask for a question which is different from that being arbitrated? I mean— It's not a question that's different from being arbitrated. The question about being arbitrated, it talks about concerning a determination. And the authority to make that decision inextricably is tied to an issue concerning a determination. Do you think the legislative history of these amendments suggests Congress wished to commit the whole matter of withdrawal liability and the terms of withdrawal to the arbitral fora? Absolutely. And, in fact, when you look at the various provisions in the statute, and I won't go through them because they're in our brief, but when you look at the provisions in the statute, it's not only about the determination of the monetary amount that's being assessed. There are all sorts of determinations, whether the employer evaded or avoided withdrawal liability, for example, is one. Whether there's a withdrawal is another. Whether there's been a sale of assets is a third. Is there any reference in the legislative history to forcing somebody out? I'm not aware of one, but I will say this. There are six courts, five courts, one arbitrator, that has dealt with this issue. Most of those courts did not deal with this issue in a withdrawal liability context, but the question was raised. But two courts did as well as one arbitrator, and it is unanimous that the fund has the authority to expel an employer. And the reason for that is simple. Courts did that? Yes. Not arbitrators? Yes. Well, how could courts have done it if it is a condition preceding that they go to arbitration? Because, as I said, the— Did other parties waive arbitration? In some of the cases, Your Honor, the issue didn't involve withdrawal liability, and therefore the withdrawal liability sections in the statute didn't apply. In one case, and this is the Bontrager case, where the court found that it could, in fact—the district court found that it could, in fact—the employer could, in fact, go to a court. The Bontrager case, the court actually later found that expulsion was proper. Two other decisions— It may well be that if this case goes to court, a court would find that expulsion is proper in this case. That isn't the issue. The issue isn't whether expulsion is proper or not. The issue is what is the forum for it. And I find it interesting that you tell me that there are five cases and one arbitration, the arbitration that is the one that really cuts for you, where a court was able to decide this. Now, there are differences. Well, but the differences are all the difference, because those differences occurred in situations in which the courts didn't take away or ignore the statutory provisions that said these decisions concerning a determination, and certainly the authority to make a determination concerns a determination, must be arbitrated. Those are cases where the determination was not made under Sections 1381 through 1399? That's correct, Your Honor. And those are cases—some of the cases. So, for example, there is another companion case to this case in which certain trustees of the fund who were outvoted by other trustees of the fund brought an action against the trustees who voted for expulsion for breach of fiduciary duty. That is also before Judge Kaplan. Could I—just so I understand your conception of the statutory framework, you say the employer has to arbitrate the dispute. The employer can't come to court, but the time for arbitration still, under the statute, only runs when there has been an exact determination of the withdrawal liability. Is that fair? No. I believe that the—although I've never seen it—I believe that an employer could, in fact, go to arbitration or put in the process, and that process is that the employer appeals to the board, and then there's a decision, and then they can institute arbitration. I'm sorry. You're saying the employer could challenge something short of— A complete assessment. That's correct. I believe that is the case. To challenge the expulsion, for example, through arbitration. That's correct. That's not the way the statute is written, right? Either party may initiate the arbitration within a 60-day period after the earlier of the date of notification or 120 days after the date of the employer's request. All of those are— But the notification can be you're expelled, is what I'm saying. You say you've never seen a case, so we don't know whether if somebody had tried to go to arbitration before, and the other party said you cannot go to arbitration because this determination has not been made, whether somebody, either the arbitrators or the courts, would say, sorry, this isn't there. So you're saying you think it could be done, but you have no authority for us to know that it could be done. I have no authority on that, Your Honor. Okay. Thank you very much. Thank you. Mr. Shah, you have three minutes rebuttal. Thank you, Your Honor. I'd like to make three points on rebuttal, and let me start with the last one, Judge Kotel, your question. The statutory regime is clear. The reason why my colleague on this side hasn't seen a case, the statute doesn't allow it. The statute is clear under 1401A and 1399B2B, and this is set forth in our brief at pages 6 and 7 and 17 through 20, and there was no dispute about this in the briefs. The trigger for the arbitration under the statute is the notification from the employer. That notification has to have various components. One of those components is the amount of withdrawal liability determination. And so, yeah. The statute really doesn't read that way either, because it says either party may initiate the arbitration. And it doesn't say you can't initiate it before that date. It simply says you may do it by these two dates. Well, Your Honor, I mean, the only provision that allows for the arbitration is there. So I think when it says either a party. Excuse me, though. It says it dictates in what circumstances disputes must be resolved by arbitration. But it doesn't preclude arbitrating other related disputes, right? I know of no other way to get arbitration under ERISA other than through this regime. This is the exclusive regime for arbitration provided by the statute. There is no other discretionary arbitration regime. How do you deal with the notion that determination made, concerning a determination made, if you require that a determination be made, then all sorts of things which are ultimately clearly arbitrable in a way that perhaps this one is not can be kept out of arbitration by getting to the courthouse for a declaratory judgment first. In other words, the parade of horribles that opposing counsel gives you, not in this case where the underlying issue may be one which is better resolved by a court, but things which clearly fit within the scheme. Sure, Your Honor. Well, here's why we don't think there would be a parade of horribles. The vast majority of cases on arbitration, this is sort of the very rare case where you have a fund trying to expel an employer that's actually making payments. This is sort of the blue moon case or half a dozen, all but one of which have actually allowed a court to decide the expulsion issue. But the vast majority of these expulsion cases are about the amount, about the timing, about the employer's conduct. But if your argument is determination made and you can't go into arbitration until a determination is made, why couldn't somebody, if we decided your way, in all that vast number of cases simply get to the courthouse first? Because the court can bounce those cases out. This court can draw a very easy line. On what basis? Because those cases are not yet ripe. There was a ripeness argument. Oh, I see. Your argument is that a declaratory judgment in those cases would not stand because the harm necessary for a declaratory judgment is not there, while in this case the harm necessary for a declaratory judgment is there because expulsion is the harm.  It's very easy to draw a line. If you're actually trying to challenge the amount or the timing of a withdrawal liability determination, it wouldn't make sense for you to come and seek a declaratory judgment before they've actually calculated the amount or the timing of the withdrawal liability determination. And if an employer tried— It would make sense if the object of it is to get it out of arbitration. Sure. But if an employer tried that, and we know of no case that that's ever been tried, but if an employer tried to do that, a court could easily dismiss it. A district court would dismiss it because it's not yet ripe. But this case was not dismissed on ripeness grounds. And here's why it's not just a placeholder complaint, which is how the other side characterizes it, or a rush to the courthouse, because even though other things have happened, there's actually been an expulsion, been a complete withdrawal, been a calculation amount, all of those things, those cannot be challenged in this suit. If we tried to go back and amend our complaint to try to challenge those other things, whether there was actually a complete withdrawal, the amount, and all of those things, then this case would be arbitrable. But why does it make sense to segregate the determination of those matters from the determination of the matter that you're bringing up about whether under the contract and the trust agreement and the statute there was authority to effectuate whatever kind of withdrawal it turned out to be? Your Honor, because the statute limits the arbitration provision to matters concerning the 1381 to 1399 determination, when you have this antecedent dispute about whether they can expel or not, that is not part of that inquiry. And so that is why it can be separated off. And that's why the other courts, the other side mentions the other cases, the Eighth Circuit cases, Boren Trauger, Central Hardware, which is cited in all the briefs and actually probably bear more intention than it got in the briefs. I encourage this Court to look at the Central Hardware case out of the Eighth Circuit. And there you have, it is indistinguishable, Your Honor. It's about expulsion authority. The Court goes through the analysis of whether there was expulsion or not, and it reviews the agreements that were at issue in that case, and it does find ultimately there was authority. But the point is that question was decided by a court. Now, the other side says, oh, that's distinguishable because that wasn't a determination made under 1383. But that's a legal conclusion. The Court obviously did not think that. If it were a determination under 1383, it would have been sent to arbitration. There was a factual issue in those cases where in one of those cases, not in all of them, in one of those cases the parties decided, okay, once the Court resolves this expulsion issue, depending on how they decided, the employer said, if we lose on expulsion, then we'll go back and make the missing payment so that will wipe out any withdrawal liability determination. But that doesn't mean that the statute should be interpreted differently based upon the facts of the case. I'll take a look at that case. Thank you very much. Thank you both. We'll argue it again. Thank you, Your Honor. We'll reserve decision.